Joe Barr Holding Corporation, et al. v. David Pagliari Mr. Kadyev, do you want to reserve any time for rebuttal? Assuming I have ten minutes, Your Honor, three. Alright, you can begin whenever you're ready. Three minutes. May it please the Court, my name is Emmanuel Kadyev of Sage Legal, LLC, for the defendant, Dr. David Haleo. I'd like to start argument by apologizing to the Court, the Courtroom Deputy, and opposing counsel for my tardiness. I'm very gracious that I'm allowed to argue. There was a horrific accident on the Williamsburg, almost as horrific as this case. The RICO claims pled in the complaint by the plaintiffs at police are defective for seven to eight reasons, some of which are apparent on their face. They should have never been brought in the first place. The Second Circuit has held repeatedly that sanctions are warranted, where it is, I quote, patently obvious to an attorney familiarized with the law. Can you point us to any case where we have ordered a district court to impose sanctions? I can't specifically point to any case. I can only point to the authority in O'Malley that held that sanctions are warranted. Doesn't the statute now say may order rather than shall? Some of the cases you cite were when the language was shall, but now it's may, which sounds as if even though something is sanctionable, and let's assume for the moment, arguably, that what you've made out is a case that this is sanctionable, it then seems to leave it to the district court's discretion on the basis of any number of things, whether it orders them or not. Even assuming arguendo that that's true, Judge, because I can't state specifically whether it was changed from shall to may, assuming that it is may. So you can't state that? I don't know specifically. Isn't the whole case about this? You didn't look at the language? I argued based on the Second Circuit authority I found that it was mandatory. But that interprets rules and statutes, right? Yes. You didn't look at the rule or the statute? I looked at Rule 11, and my understanding is that even if it's discretionary, the court abused its discretion. No, that's not the question. I can't say with certainty that it says shall or may. I believe that it says may. I guess I'm just surprised that you wouldn't have looked before oral argument. If you're basing your argument on a rule or a statute, then you wouldn't have checked the language that governs. I'm basing my argument both on the rule and the Second Circuit court. If you're not basing it on the rule, you're telling us you don't know what the rule says? I mean, we can look it up right now. Yes. But you literally come here to argue based on what the rule means, and you don't know what the rule says? I just don't have the rule in front of me, so I can't say with certainty at the moment. But my understanding is the Second Circuit says that it's mandatory, and that's my argument. And then in response to his question— But you're saying that you don't know whether the rule changed and whether you're arguing based off outdated precedent. That's what you're telling us, that you don't know. I'm unaware if the rule changed, Your Honor. That could make you sanctionable, but fortunately it says may, and so it is unlikely that you will be sanctioned for bringing an appeal. The district court gave reasons. It's not—even under an abusive discretion standard here, the district court gave reasons of why it believed that sanctions wasn't warranted. And as Judge Nardini pointed out, I don't believe ever where a court has exercised that discretion, said, you know what, you have to impose it in this situation. And I'm curious what you think was wrong with the district court's reasons. They got discovery in the state case. They believed they had an arguable statute of limitations exception, equitable estoppel. We get cases like that all the time where the statute may have run, and people think that they were misled. Are all those cases sanctionable if they turn out to be wrong, that the court says, you know what, we don't think you've made out an equitable estoppel claim? This case is markedly different for a variety of reasons. First of all, there was a prior case where RICO was brought and it was dismissed. All those other cases where this occurs, that doesn't happen. Second, this appeal— I don't think you know all the other cases where people have lost, at which we sitting here say, you know, that was a pretty lousy argument, and yet sanctions aren't offered. That is, you may think this case is different from all the others. But unfortunately, we see an awful lot of cases where there's very little argued, and they don't turn out to be sanctionable. I submit that it was still an abuse of discretion for the main reason that the court's reasoning was, well, there are state claims that are valid. We didn't move to dismiss the state claims, and there's a huge difference between RICO and the state claims. RICO carries treble damages and attorney's fees. Those state law claims don't. This case has unnecessarily dragged on because of the RICO claim, where they're demanding $2.5 million. If you do the basic math, 38% of that holdback fund, $1.5 million, is $570,000. So you're saying the case is dragging on too long? Who brought this appeal? Is there a cross-appeal there? There's no cross-appeal. Okay. So this case in the federal court would be over except for the fact that you brought this appeal, just to be clear, in terms of the dragging on part. That's correct. But the state court case continues, Your Honor. Regardless of what we do here. Correct. You're not looking for us to direct sanctions in relation to a state court case, right? No. Which we couldn't do. You could not do that. The Second Circuit here can do one of two things. Based on the record as a whole, it could issue sanctions based on its discretion. Or, an alternative, the court can remand to the district court to make a full record and determine whether sanctions are warranted. I have to implore the court to consider the circumstances here. We're dealing with, forgive me, a spoiled nephew who received money from a bakery, which he never worked in. I mean, maybe they're right, maybe you're right. I don't know, right? It could be a spoiled nephew or it could be a sinister aunt. So I don't understand why you would try to argue the facts that have not been adjudicated before us, right? We're not going to just adopt your version. Just like we're not going to adopt their version of the facts, right? Understood. I just think that the court could pick this up from the record based on the facts. We can pick up who's right and who's wrong here? No. The court can pick up the positions of the parties on what occurred. What happened was . . . Well, I think we have now. Our allegation is the complaint. Usually, when we're at just the complaint stage, we have to assume the veracity of all the allegations of the complaint, right? That's correct. So I don't see how we're going to somehow adopt your view of the facts when we're at this preliminary stage of the game. Well, the record on a motion for sanctions, the court could look to items outside the pleadings, and there is record evidence of some of the facts that I'm putting forth. So this individual never worked in this bakery, received a salary weekly. He received 38% of the sale proceeds on a $22 million sale. So he received approximately $7 to $8 million. I don't want to go through the whole facts of the case. All right? You have your three minutes for rebuttal. If you want to do that, you can do it in your three minutes. Okay? And can I recommend that you just . . . I don't know if you've got it there, but if you brought your rules, read Rule 11. All right. I can back up for rebuttal. All right. I just want to point out that the district . . . No, no, no, no, no, no, no. You have your rebuttal time to point what you want to point out. Okay? Thanks. All right. Mr. Brecker? Good morning, Your Honors. I just want to point out that it's not 38% that we're seeking of the funds that were stolen. It's 100% because the plaintiffs are not just the nephew, but also the corporation from which the funds were taken. And the $1.5 million was on deposit and earned interest for seven years, which was also taken. So, it's a legitimate $2 million claim. The fact that the aunt admitted that she owed the money led to the court to find that the claims that it had dismissed in 2020 should be restored after we had taken the appellant's deposition in which he admitted that he received the money that the checks that he deposited said loan. He didn't deny that a wire was sent to pay his medical malpractice insurance after his check for it had bounced, showing that he had told his mother to do it. He had some control here. And the appellate division, the first department, recently restored the claims against the accountants that had been dismissed by the motion court in state so that almost all the claims had been restored and are now pending. And indeed, when the case was remanded to the state court, a motion was made to consolidate the claims, which had been my intention at the very beginning. As I stated in my brief, the lower court's law secretary instructed me not to bring the case against the appellant by moving to amend the original complaint after his deposition. The judge wasn't interested in hearing the case against the appellant, so I had to file it in state court. I didn't file it in federal court. And I'm certainly not arguing against what the district court decided. I'm arguing in support of the seven reasons that she gave for the seven arguments that the appellant made on pages 8 to 13 to 8 to 15 of the record, in which she gave her reasons and exercised her discretion. And I can go over them, but I don't think it's necessary. It's right in the record, as far as any other questions that the court may have. All right. Thank you. Thank you, judges. Based on the record here, there was no chance of success for the RICO claim. All the arguments we heard in opposition were based on the merit of state law claims. We never made an argument to dismiss the state law claims, which are markedly different from a RICO claim. The district court found that A195, that the RICO claims were meritless, and plaintiff's reliance on the discovery does not deal with, for example, the statute of limitations argument. There's also no evidence necessary. One of the reasons the court declined below to issue sanctions was that there was no evidence of an improper purpose. The Second Circuit held in O'Malley that no evidence is necessary for bringing that a claim was brought for an improper purpose. And Teamsters— That's fine. It may be that sanctions can be given even when there isn't an improper purpose. But that doesn't mean that that isn't a relevant question when the question is, may this against shall? That is just what the district court can look at. I'll end my argument by stating that Dr. Haleo has been severely damaged by the imposition of this RICO claim. Every time he reduced his license to practice medicine, he has to explain this case. And the court should consider that because one of the reasons that the lower court below dismissed the RICO claim is because there is nothing in the complaint to indicate that Dr. Haleo exercised any control over the alleged RICO enterprise. Setting aside that there was no adequate enterprise alleged, that there was no—that tax fraud is not a predicate, that none of the predicate acts were related and continuous, all those could be good faith disputes over the facts. But these bases, that it's time barred, that he indisputably exercised no control over the alleged enterprise, he should not be punished with just receiving a dismissal of this case and not receiving some form of sanctions. He was hurt by this. And this is fixatious litigation going on for years and years that should be resolved. So with that, I would ask and urge the court to exercise its discretion to grant the appeal in one of the two forms that I've argued and requested. Thank you. Thank you. Thank you to both of you. We'll reserve the decision. Have a good day.